IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 17-371-3 |
| JAMES S. QUAY, | |
| Defendant. | |

**OPINION**

**Slomsky, J.**                                                                                                     **September 3, 2021**

**I.      INTRODUCTION**

Defendant James Quay, who is serving a 125-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 199.)  In his Motion, Defendant asks the Court to grant him compassionate release because he "ha[s] been determined to have Care Level 2 symptoms which make [him] a higher risk for COVID-19[.]"  (Id. at 5.)  He further contends that he has a "job that awaits [him] . . . in Atlanta," he "ha[s] completed the Non-Resident Drug Abuse Treatment Program and Parenting Program[,]" and he "ha[s] learned [his] lesson and accept[s] responsibility for what [he] ha[s] done and want[s] to try to make it right by using [his] skills to repay the victims [he has] harmed."  (Id. at 11.)

The Government opposes Defendant's Motion, citing his criminal history, the risk of harm he presents to the community, his service of less than one-half of his sentence, and the fact that he is fully vaccinated against COVID-19.  (See Doc. No. 209 at 1, 5, 7.)  Defendant and the Government both filed Defendant's sealed medical records which show that Defendant has medical conditions including Type II diabetes, hypertension, and obesity.  (See Doc. Nos. 200 at

1

12; 210 at 15, 75.) His medical records also show that he received both doses of the Pfizer COVID-19 vaccine in February 2021. (<u>See</u> Doc. Nos. 200 at 51; 210 at 111.)

For reasons that follow, Defendant's Motion (Doc. No. 199) will be denied.

## II.     BACKGROUND

### A.     Defendant's Criminal History

Defendant Quay is presently incarcerated at Federal Correctional Institution ("FCI") Talladega in Talladega, Alabama for two counts of securities fraud and aiding and abetting securities fraud. In affirming Defendant's sentence on appeal, the Third Circuit Court of Appeals summarized the facts of Defendant's case as follows:

> Quay, a former attorney and investment advisor, pleaded guilty to two counts of securities fraud in 2019. Over the two decades prior to this conviction, he participated in several schemes selling fraudulent investment products. Due to some of this fraudulent activity, the Securities and Exchange Commission obtained civil judgments and injunctions against him. During this time, Quay was also convicted of criminal contempt of court and tax fraud, each resulting in a term of imprisonment. Further, Quay was disbarred and then continued to hold himself out as an attorney, using an alias to conceal that he was disbarred.
>
> The securities fraud leading to Quay's conviction in this case began in 2010, when Quay and a partner co-founded Aptus Planning LLC, a company that provided estate planning services and sold investment products. Through Aptus, Quay began promoting an investment firm, Paul-Ellis Investment Associates, which had falsely inflated its returns. Quay and his partner recruited thirteen clients to invest a total of $1,295,000 with Paul-Ellis Investment Associates. At Quay's request, Paul-Ellis Investment Associates wired $385,900 of the $1,295,000 into a bank account controlled by Quay. Quay gave the $385,900—together with an additional $100,000 he solicited from another client—to someone with no institutional investing experience or licenses, whom Quay hired to invest the money. Ultimately, all but $9,000 was lost. After losing his clients' money, Quay told them the investment strategy was "performing as expected" and that he anticipated "continued growth."
>
> Based on this conduct, the Government charged Quay with two counts of securities fraud. While out on bond he sent text messages to Government witnesses, making false statements and requesting that the witnesses testify favorably to him. The Government then charged him with three counts of witness tampering. He later entered into a plea agreement to plead guilty to the securities fraud counts in exchange for the Government moving to dismiss the witness tampering charges.

> While out on bond awaiting sentencing, but after the guilty plea was entered, Quay cut his electronic monitoring device and absconded from supervision for twenty days before he was found and taken back into custody.
>
> At sentencing [on February 18, 2020], Quay's total offense level was 28. Based on his convictions for tax fraud and criminal contempt—but not considering his history of selling fraudulent investment products—Quay's criminal history category was II. Accordingly, the applicable Guidelines range was 87 to 108 months' imprisonment.
>
> Quay argued a sentence at the bottom of the Guidelines range was appropriate because his age made recidivism unlikely, his history of fraud was irrelevant, and his ability to pay restitution would increase with less imprisonment. The court considered these arguments and weighed the sentencing factors outlined in 18 U.S.C. § 3553(a), but ultimately sentenced Quay to 125 months' imprisonment [followed by 5 years' supervised release].[1] Th[e] 17-month upward variance was based on Quay's history of fraudulent conduct, flight from supervision, and comments showing lack of remorse.

United States v. Quay, 841 F. App'x 388, 389-90 (3d Cir. 2021). The Third Circuit subsequently affirmed Defendant's "above-Guidelines sentence" on appeal, finding that "the sentence [was] procedurally and substantively reasonable because th[is C]ourt considered the § 3553(a) factors and based the upward variance on rational conclusions supported by the record." Id. at 390.

To date, Defendant has served approximately 23 months of his sentence and has earned approximately 2 months' credit for good conduct. (See Doc. No. 209 at 5.) With good time credit, his anticipated release date is August 4, 2028. (See id.)

    **B.**     **Defendant's Pro Se Motion for Compassionate Release**

On August 2, 2021, Defendant filed the instant pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 199.) In the Motion, Defendant avers that he should be granted compassionate release because of his "substantial Care Level 2 issues which increase [his] health risks during the COVID-19 ongoing pandemic." (Id. at 10.) His attached

---

[1] "The court also ordered Quay to pay over one million dollars in restitution, jointly and severally with two co-defendants." United States v. Quay, 841 F. App'x 388, 390 n.1 (3d Cir. 2021); see also (Doc. No. 151 at 6-8.)

3

medical records show that he has Type II diabetes, and with this, Defendant notes that "the heightened risk of Type 2 diabetes when contracting COVID . . . can lead to death." (Id.) Defendant then avers that the Warden of FCI Talladega only denied his request for home confinement because he has not served more than half of his sentence, but he "would have been approved with all [his] health issues[.]" (Id.)

In addition, Defendant states that "[a]n added benefit to early release includes [his] ability to pay back [his] victims from the job that awaits [him] . . . in Atlanta, GA." (Id. at 10-11.) He "ha[s] learned [his] lesson and accept[s] responsibility for what [he] ha[s] done[,] and want[s] to try to make it right by using [his] skills to repay the victims [he has] harmed." (Id. at 11.) "At this point[,]" Defendant asserts that "any additional punishment is only harming the victims and taxpayers[.]" (Id.) As support for his Motion, Defendant attached sealed medical records showing that he has medical conditions including Type II diabetes, hypertension, and obesity. (See Doc. No. 200 at 12.)

C. The Government's Response in Opposition to Defendant's Motion

On August 30, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 209.) In its Response, the Government argues that Defendant's Motion should be denied because Defendant "has been vaccinated against COVID-19 and therefore does not present an extraordinary and compelling reason permitting relief." (Id. at 1.) It further avers that "compassionate release is inappropriate" in light of "the risk of harm that [D]efendant presents to the community, the time remaining on his sentence, and all other considerations under 18 U.S.C. § 3553(a)[.]" (Id.)

Regarding Defendant's medical conditions, the Government also attached Defendant's sealed medical records which confirm that he has Type II diabetes, hypertension, and obesity. (See id. at 6; Doc. No. 210 at 15, 75.) But the Government notes that "[t]hese conditions appear well-

controlled at this time with medication provided by the institution[,] . . . . [D]efendant is fully ambulatory and engages in all normal activities of daily living[,]" and most importantly, he "received doses of the Pfizer [COVID-19] vaccine on February 2, and February 23, 2021" and is "fully vaccinated against COVID-19." (Doc. No. 209 at 7; see also Doc. No. 210 at 111.) As such, the Government asserts that Defendant "no longer presents an 'extraordinary and compelling reason' because he has been fully vaccinated since February 2021." (Id. at 17.)

As for the § 3553(a) sentencing factors, the Government submits that Defendant "fails to demonstrate how release, twenty-five months into a 125- month sentence for a serious fraud crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." (Id. at 27.) In the Government's view, "[a] consideration of the [§ 3553(a)] factors . . . shows that release at this point is inappropriate based on the offense of conviction, [D]efendant's managed medical condition, and the amount of time remaining on [D]efendant's sentence." (Id.)

### III. DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[2] See § 3582(c)(1)(A)(i).

---

[2]   A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—

---

warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Harris, 973 F.3d 170, 171 (3d Cir. 2020) (holding prisoner need not fully exhaust administrative rights if thirty days pass from warden's receipt of compassionate release request). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On May 5, 2021, Defendant sent a request for compassionate release to the Warden at FCI Fort Dix. (See Doc. No. 199 at 7.) On June 21, 2021, over thirty days after Defendant submitted the request, he drafted and signed the instant Motion for Compassionate Release, which was ultimately filed on August 2, 2021. (See id. at 6, 9.) Because over thirty days have elapsed from the date of Defendant's request and the filing of the instant Motion, he has met the exhaustion requirement.

6

> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or mental condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

7

    (B)  Age of the Defendant. The defendant

        (i)      is at least 65 years old;

        (ii)     is experiencing a serious deterioration in physical or mental health because of the aging process; and

        (iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)  Family circumstances.

        (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[3]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

---

[3] Although by its express language § 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2)  the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

 . . . [and]

  (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

  **B.**  **Defendant's Motion for Compassionate Release Will Be Denied**

 Defendant's Motion (Doc. No. 199) will be denied. Even if Defendant's diabetes and hypertension are extraordinary and compelling reasons for his release, he is fully vaccinated against COVID-19, and COVID-19 is no longer present to a significant degree at FCI Talladega.[4]

---

[4] No actual, non-speculative risk of contracting COVID-19 at FCI Talladega presently exists. Presently, only one inmate and seven staff members at FCI Talladega currently have COVID-19. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Sept. 3, 2021), https://www.bop.gov/coronavirus/. These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." COVID-19 Cases, supra (emphasis omitted). Given this information, COVID-19 is not present to a significant degree at FCI Talladega. For this reason, and because the § 3553(a) sentencing factors weigh against a reduction or modification of Defendant's sentence, his Motion will be denied. See United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence and because

Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[5] Each of these conclusions is discussed seriatim.

### 1. Defendant's Medical Conditions May Present an Extraordinary and Compelling Reason for His Release, But Defendant is Fully Vaccinated Against COVID-19

Defendant alleges in his Motion that he "ha[s] been determined to have Care Level 2 symptoms which make [him] a higher risk for COVID-19[.]" (Doc. No. 199 at 5.) In its Response in Opposition, the Government acknowledges that Defendant "presents the risk factors of type II diabetes, hypertension, and obesity[,]" but submits that "he no longer presents an 'extraordinary and compelling reason' because he has been fully vaccinated since February 2021." (Doc. No. 209 at 17.)

Because Defendant's medical records show that he has Type II diabetes, hypertension, and obesity (see Doc. Nos. 200 at 12; 210 at 15, 75), for purposes of this Motion, the Court will assume without deciding that Defendant's diabetes, hypertension, and obesity present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic.[6] Nevertheless, the Court notes that other courts have denied compassionate release where defendants presented COVID-19 risk factors but committed serious fraud offenses. See, e.g., United States v. Kolodesh, 484 F. Supp. 3d 245, 247-48 (E.D. Pa. 2020) (denying relief to a 58-year-old defendant who

---

he has not demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Fort Dix.").

[5] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

[6] The CDC notes that diabetes, hypertension, and obesity are COVID-19 risk factors. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

11

committed a $16 million fraud and who suffers from heart disease, obesity, and other conditions); United States v. Hill, No. 18-271, 2020 WL 4431530, at *1 (E.D. Pa. July 31, 2020) (denying relief to a 57-year old defendant who is obese and has heart disease but also is a serial fraudster).

More importantly, Defendant received both doses of the Pfizer COVID-19 vaccine in February 2021. (See Doc. Nos. 200 at 51, 68-69; 210 at 111.) Courts in this District also have denied compassionate release, in part, because the defendant had been—or would soon be—vaccinated against COVID-19. See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna [COVID-19] vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the Bureau provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot. Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law. He presents minor health concerns and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC Lewisburg.").

Given the holdings in these cases, and the fact that Defendant has been fully vaccinated against COVID-19 since February, he has not presented extraordinary and compelling reasons to

justify granting his Motion for Compassionate Release.[7]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's diabetes and hypertension present extraordinary and compelling reasons for his release, the relevant § 3553(a) factors do not support his compassionate release to home confinement or a sentence reduction. As a threshold matter, other courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief. See, e.g., United States v. Glenn, No. 15-99, 2021 WL 3190553, at *7 (E.D. Pa. July 28, 2021) (denying compassionate release because, notwithstanding the defendant's diabetes, "the relevant § 3553(a) factors d[id] not support his compassionate release to home confinement or a sentence reduction"); United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic"); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here. . . . [T]he [c]ourt [must] consider the 'factors set forth in section 3553(a) to the extent they are applicable' before [it] may reduce [defendant's] sentence. These factors . . . support the need for [defendant] to serve the sentence imposed.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant

---

[7] Defendant is 60 years old. (See Doc. No. 209 at 6.) He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children. See § 1B1.13 n.1(A)-(C). Thus, the factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(A)-(C), are not relevant here.

sentencing factors counsel against Defendant's release at this time. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). Defendant is presently incarcerated for two counts of securities fraud and aiding and abetting securities fraud. (See Doc. No. 151 at 1.) Defendant states that if he is released, he is "willing to give up to 50% of [his] net earnings to the repayment of victims' losses," and he "want[s] to try to make it right by using [his] skills to repay the victims [he has] harmed." (Doc. No. 199 at 11.) However, Defendant's assertions are undermined by the nature and circumstances of the instant offense and his history and characteristics.

The Government notes in its Response in Opposition that Defendant "has a long and unbroken history of fraudulent conduct." (Doc. No. 209 at 26.) In the Government's Sentencing Memorandum, which it adopts by reference in its Response in Opposition, (see id. at 5 n.1), it highlighted "material facts" from Defendant's fraudulent history:

1) In 2005, while he was a practicing attorney and providing tax advice, he pled guilty to filing a false income tax return, and was sentenced to 15 months in prison;

2) In 2007, after his release from prison, he was disbarred;

3) In 2003, a jury in state court in Georgia found that he had breached his fiduciary duty to a former employer, an estate planning company, by, among other things, forging a client's signature on a trust account application in 2000; and

4) During 2007, 2008, and part of 2009, he was paid referral fees for soliciting clients to invest in an investment program that was revealed as a fraud in April of 2009.

(Doc. No. 147 at 10.) The Government also noted that prior to sentencing in the instant case, Defendant "cut his electronic monitoring bracelet and fled." (Id. at 4.)

At sentencing, the Court acknowledged both the nature and circumstances of instant offense and Defendant's fraudulent criminal history:


> I have to look at the nature and circumstances of the offense. We have more than ten victims of the fraud in this case. People who, . . . thought they were dealing with somebody they could trust, but it was somebody that just lied to them wholesale, and he knew when he was talking to them that he was lying, looked in their face . . . and perpetrated a fraud that has brought nothing but misery, harm, and a lot of loss of sleep to the victims of his fraud. When I look at the numbers that are involved in terms of the restitution obligation here, we have over a million dollars that has to be repaid. . . . So this case involves a very serious and the facts of how the people would take advantage of the circumstance of the offense is quite serious. I also have to take a look at and consider the history and characteristics of the Defendant. . . . he used his education to defraud people and misrepresent to people so that he could line his own pocket. It's astounding to me that he's convicted in the tax case in 2004, he did over a year in jail for participating in that crime, and yet he still held himself out after he was disbarred to be a lawyer. . . . if you have that mental attitude, it's an attitude that's going to lead you to just continue to commit more crimes, and the pattern of fraud over the years is truly something that is not in his favor at all.

(Doc. No. 161 at 95:4-16, 96:3-97:2.) As such, there is no assurance that Defendant would refrain from criminal activity if he were released.

The Court also has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served less than one-quarter of his 125-month sentence. (See Doc. No. 209 at 5.) The magnitude of Defendant's crimes warrant the sentence he received.[8] Despite Defendant's contention that he "ha[s] learned [his] lesson and accept[s] responsibility for what [he has] done[,]" (id. at 13), the

---

[8] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

Government believes that he "continues to present a danger to the community" in light of the fact that, "at the time of his offense, the defendant was engaged in prohibited conduct that presented a significant danger to the community[,]" and "when arrested for the securities fraud, [he] engaged in witness tampering while on pretrial release[] and he cut his electronic monitoring bracelet and fled." (Doc. No. 209 at 26.) The Court agrees with the Government and finds that Defendant's release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Defendant received a 125-month sentence, which was above the Sentencing Guideline range of 87-108 months' imprisonment. Even though the Court sentenced Defendant above the Guideline range, the Third Circuit affirmed Defendant's sentence on appeal. See Quay, 841 F. App'x at 392. As stated in Section II, supra, the Third Circuit found that "the sentence [was] procedurally and substantively reasonable because th[is] [C]ourt considered the § 3553(a) factors and based the upward variance on rational conclusions supported by the record." Id. at 390. Therefore, a reduction in Defendant's sentence would frustrate the legislature and Sentencing Commission's goal of offering courts the leeway to impose a sentence that is sufficient but not greater than necessary to serve the goals of sentencing.

In sum, none of the applicable § 3553(a) factors favor Defendant's release.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 199) will be denied. An appropriate Order follows.